**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1:11-CR-301 |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| RAMIL KISMAT, | : | |
| | : | |
| Petitioner | : | |

## MEMORANDUM

Presently before the court in the above-captioned matter is petitioner Ramil

Kismat's ("Kismat") *pro se* motion (Doc. 148) to vacate, set aside, or correct his

sentence pursuant to 28 U.S.C. § 2255.[1]  Kismat asserts that he was denied effective

assistance of counsel in violation of the Sixth Amendment to the United States

Constitution.  Also before the court is Kismat's motion (Doc. 163) for bail pending

disposition of his § 2255 petition, and his motion (Doc. 165) for the appointment of

counsel to conduct discovery in support of his ineffective assistance claims.  For the

reasons that follow, Kismat's § 2255 motion (Doc. 148) and motion (Doc. 165) for the

appointment of counsel to conduct discovery will be denied.  Kismat's motion (Doc.

163) for bail will be denied as moot.

## I.    Factual Background & Procedural History

On October 26, 2011, a grand jury returned an indictment charging Kismat

and his co-defendant, Sergey Sorokin ("Sorokin"), with (1) bank fraud, in violation

of 18 U.S.C. § 1344 (Count I); (2) wire fraud, in violation of 18 U.S.C. § 1343 (Count

---

[1] "A prisoner in custody under sentence of a [district] court . . . claiming . . . that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence."  28 U.S.C. § 2255.

II); (3) identity fraud, in violation of 18 U.S.C. § 1028(a)(7) (Count III); and (4)

aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Count IV).  (Doc. 1).

On January 10, 2012, Kismat entered a plea of not guilty to all charges, (Doc. 12),

and the court appointed Dennis E. Boyle, Esquire ("trial counsel") as counsel on his

behalf.  (Doc. 22).

In the indictment, the government alleged that on several occasions between

June 2010 and October 2010, Kismat and Sorokin used compromised credit card

accounts at various Target stores in central Pennsylvania to purchase merchandise,

Target gift cards, and Visa and MasterCard gift cards.  (Doc. 1).  A jury trial

commenced on November 26, 2012 and continued through November 29, 2012.

(Doc. 56).  The jury found Kismat and Sorokin guilty of bank fraud (Count I) and

wire fraud (Count II) and reached a deadlock as to the identity theft charges

(Counts III and IV).  (Doc. 72).  The court thereafter declared a mistrial on the

identity theft charges (Counts III and IV), (Doc. 122 at 26), which the government

elected not to re-prosecute.  (See Doc. 132).

The United States Probation Office conducted a presentence investigation

and prepared presentence reports ("PSRs") for both Kismat and Sorokin.  The

PSRs recommended that a total loss amount of $529,194.00 be attributed to Sorokin

and Kismat, based upon the aggregate maximum credit limit of the stolen credit

accounts.  See U.S.S.G. § 2B1.1(b)(1).  Prior to Sorokin's sentencing, the court held

an evidentiary hearing to determine the loss amount.  (See Doc. 93); § 2B1.1(a)(1).

Therein, the government presented evidence of unlawful transactions occurring on

twelve separate dates and established the aggregate maximum credit limit of the

compromised accounts used by Kismat and Sorokin on those dates. (See Doc. 138 at 6). Relying on this evidence, the court found a total intended loss amount of $432,119.29 and applied a corresponding fourteen-level increase to Sorokin's base offense level. (See id.); § 2B1.1(b)(1)(H). Kismat agreed to incorporate by reference the evidence presented at the loss amount hearing. (Doc. 138 at 7).

At Kismat's sentencing hearing, the court adjudged that Kismat, like Sorokin, was responsible for an intended loss of $432,119.29. (Id. at 9, 14). The court then determined that Kismat's total adjusted offense level was twenty-seven, comprised of a base offense level of seven, see § 2B1.1(a)(1); a fourteen-level increase for the amount of loss involved, see § 2B1.1(b)(1)(H); a four-level increase for the number of victims, see § 2B1.1(b)(2)(B); and a two-level increase for possession of five or more means of identification which were unlawfully produced from, or obtained by the use of, another means of identification, see § 2B1.1(b)(11)(C)(ii). (Doc. 138 at 18). Incorporating Kismat's criminal history category of I, the court calculated a Guidelines sentencing range of seventy to eighty-seven months. (Id.) After addressing the salient 18 U.S.C. § 3553(a) factors, the court departed six months below the Guidelines range to impose a sentence of sixty-four months' imprisonment. (Id. at 24).

Kismat filed a notice of appeal with the United States Court of Appeals for the Third Circuit on December 20, 2013. (Doc. 133). On June 20, 2014, the Third Circuit affirmed Kismat's conviction and sentence. United States v. Kismat, 570 F. App'x 155 (3d Cir. 2014) (nonprecedential). Kismat timely filed the instant motion (Doc. 148) to vacate, set aside, or correct his sentence pursuant to

28 U.S.C. § 2255 on October 30, 2014.  The government submitted a brief (Doc. 155) in opposition on December 11, 2014.  Kismat filed a reply brief (Doc. 160) on February 24, 2015 and a supplemental response (Doc. 161) based on new legal authority on February 25, 2015.  Kismat filed the instant motions (Docs. 163, 165) for bail pending disposition of his § 2255 petition and for the appointment of counsel to conduct discovery in support of his ineffective assistance claims on May 26 and May 29, 2015, respectively.  The motions are ripe for disposition.

II.   <u>**Legal Standard**</u>

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence.  In general, relief under § 2255 is afforded based on one of four grounds: (1) the sentence was imposed in violation of the Constitution or other federal laws; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  R. GOVERNING § 2255 CASES 1(a).  "When reviewing a motion pursuant to § 2255, the court must accept the truth of the petitioner's allegations unless clearly frivolous based on the existing record."  See <u>United States v. Booth</u>, 432 F.3d 542, 545 (3d Cir. 2005).  A district court is not required to hold a hearing when the record conclusively shows that a movant is not entitled to relief.  See <u>United States v. Lilly</u>, 536 F.3d 190, 195 (3d Cir. 2008).

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To prevail on this claim, a petitioner must demonstrate (1) that counsel's

4

representation fell below an objective standard of reasonableness based on prevailing professional norms and (2) that the deficient representation was prejudicial.  See id. at 687-88.  Conclusory allegations are insufficient to entitle a petitioner to relief under § 2255.  See United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000); Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63 (1977)).

In determining whether counsel has satisfied the objective standard of reasonableness in accordance with the first prong, courts must be highly deferential toward counsel's conduct.  Strickland, 466 U.S. at 689.  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90).  Counsel will not be deemed ineffective for failing to raise a meritless claim.  See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different.  See Strickland, 466 U.S. at 694.  The district court need not carry out its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one. See id. at 697; Lilly, 536 F.3d at 196.

III.   **Discussion**

In the instant motion, Kismat asserts approximately thirteen different grounds in support of his request for § 2255 relief.  (Doc. 148).  Many of Kismat's arguments overlap.  For his benefit, the court will address each substantive ineffective assistance claim separately.  Ultimately, the court finds that none of Kismat's averments establish both a constitutional deficiency in representation and resulting prejudice.  The court will thus deny his petition in its entirety.

A.     **Trial Counsel's Failure to Advise on the Plea Process**

Kismat first claims that trial counsel rendered ineffective assistance by failing to properly advise Kismat concerning the plea negotiation process. Specifically, Kismat asserts that trial counsel committed constitutional error by failing to explain to Kismat: (1) the elements of the crimes charged, (Doc. 148 at 13); (2) the meaning behind the concept of pleading guilty, (Doc. 160 at 13); (3) the disparity in sentence exposure between proceeding to trial and entering a guilty plea, (Doc. 148 at 13); (4) the manner in which intended loss amount is calculated, (id., Decl. ¶ 8); (5) the potential benefits of entering a guilty plea, (Doc. 160 at 14); and (6) the strength of the government's case against Kismat as to the bank fraud and wire fraud charges, (Doc. 148, Decl. ¶ 6; Doc. 160 at 14).  Kismat contends that he would have instructed trial counsel to engage in plea negotiations on his behalf had trial counsel introduced the foregoing concepts.  (Doc. 148, Decl. ¶ 9).

A defendant is entitled to effective assistance of counsel in determining how to plead and whether to engage in plea negotiations.  See Missouri v. Frye, 132

S. Ct. 1399, 1405 (2012) (stating that the right to counsel extends to all critical stages of criminal proceedings, including arraignments, post-indictment interrogations, and entry of a guilty plea); United States v. Livingston, No. 1:09-CR-0072-03, 2014 WL 840002, at *6 (M.D. Pa. Mar. 4, 2014) (Conner, C.J.).  Counsel's performance may be deemed deficient if counsel gives advice "so incorrect and so insufficient" that it undermines the defendant's "ability to make an intelligent decision" whether to plead guilty.  United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992).  However, counsel is not ineffective for failing to engage in plea negotiations when the client maintains his innocence and wants to proceed to trial.  See United States v. Gonzalez-Rivera, 217 F. App'x 166, 169 (3d Cir. 2007) (nonprecedential) ("[Failure to initiate] plea discussions not authorized by a client maintaining his innocence . . . . [does] not fall below an objective standard of reasonableness under Strickland."); United States v. Gordon, 979 F. Supp. 337, 341 (E.D. Pa. 1997) ("It represents . . . [a] great[] constitutional leap to hold that the Sixth Amendment *requires* that the defense lawyer press . . . unwelcome advice on what counsel would reasonably expect to be unwilling and deaf client ears.").

To satisfy the prejudice requirement, the petitioner must establish a reasonable probability that but for counsel's erroneous advice (1) the petitioner "would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances;" (2) "the court would have accepted its terms;" and (3) "the conviction or sentence, or both . . . would have been less severe than under the judgment and sentence that in fact were imposed."  Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012); see Booth, 432 F.3d at 546-47 (requiring petitioner to

demonstrate that but for counsel's allegedly ineffective performance during the plea negotiation process, petitioner would have likely received a lower sentence).  The court in <u>Gonzales–Rivera</u> found that the petitioner failed to satisfy the prejudice prong of <u>Strickland</u> when he argued "summarily that he would have accepted a plea agreement and that there is a reasonable probability that his sentence would have been more favorable had he pursued a plea agreement."  217 F. App'x at 170. The court held that any prejudice that the petitioner may have suffered was "far too speculative" and that the petitioner's "contention that he would have accepted a guilty plea [was] belied" by evidence in the record.  <u>Id.</u> (noting that the petitioner "maintained his innocence throughout [the trial] proceedings and therefore was not willing . . . to plead guilty to the charges against him").  District courts in this circuit have applied this reasoning and rejected ineffective assistance of counsel claims relating to plea negotiations when a petitioner maintained innocence throughout the proceedings. <u>E.g.</u>, <u>United States v. Kama</u>, No. 09-689, 2014 WL 3905970, at *4 (E.D. Pa. Aug. 8, 2014) ("It is impossible to conclude, in light of Petitioner's testimony proclaiming his innocence and the record of failed plea negotiations, that Petitioner would have accepted an open plea and admitted guilt . . . ."); <u>Donna v. United States</u>, No. 10–1607, 2011 WL 322636, at *7 (D.N.J. Jan. 31, 2011) (finding that the petitioner did not show prejudice under <u>Strickland</u> because she maintained her innocence throughout the trial); <u>United States v. Jackson</u>, No. 09–5255, 2010 WL 1688543, at *3-4 (E.D. Pa. Apr. 27, 2010) (rejecting the petitioner's ineffective assistance of counsel claim where he maintained innocence throughout the

proceedings and the record did not demonstrate that he would have accepted a guilty plea).

Turning to the matter *sub judice*, assuming *arguendo* that trial counsel's pretrial advocacy was ineffective, Kismat must establish prejudice.  Kismat claims that had he entered into a binding plea agreement, "a sentence of no more than [fifteen to twenty-one] months was a real possibility." (Doc. 148 at 16).  In support of this assertion, Kismat states that "both parties agree the evidence of [his] guilt was overwhelming and the 'actual' loss was $25,900." (Id.)  However, throughout his supporting papers, Kismat maintains his innocence with respect to the identity theft charges.  (Id. at 32; Doc. 160 at 15).  Therein, Kismat posits that he "always admitted" guilt to the bank fraud and wire fraud charges and that he proceeded to trial merely to contest the aggravated identity theft charge.  (Doc. 148 at 32).  Kismat additionally contends that "he at no time possessed an intent to incur a loss . . . in excess of $400,000 or anything close to that amount." (Id. at 22).

The provenance and substance of Kismat's assertions of prejudice are far from pellucid.  Kismat appears to claim that the government would have extended a plea offer that only required him to plead guilty to bank fraud and wire fraud; that the court would have accepted the terms of the plea agreement; and that the court would have imposed a sentence of less than sixty-four months.  (Doc. 148 at 16, Decl. ¶ 30); see Lafler, 132 S. Ct. at 1384.  This argument is unavailing.  First, Kismat assumes that despite "the impenetrable strength of the [g]overnment's case as to the bank and wire fraud counts" and "the overwhelming evidence of [his] guilt and intent to defraud," the government would have agreed to dismiss the counts of

identity theft.  (Doc. 160 at 14).  Second, a fundamental component of Kismat's hypothetical plea is a fixed "lower intended loss."  (Doc. 148, Decl. ¶ 30).  Kismat emphatically claims that he intended to inflict approximately $25,900 in loss, approximately $400,000 less than the amount applied by the court at his sentencing. (Doc. 148 at 22; Doc. 160 at 19).  Given the strength of the government's evidence on this point, it defies credulity to presume that the government would have assented to such a diminished loss amount and that the court would have accepted same. (See Doc. 155 at 6).  In light of Kismat's continued assertion of innocence to the identity theft charges; his insistence upon a significantly reduced loss amount; and the stratified speculation undergirding his averments, Kismat fails to demonstrate prejudice.

Alternatively, Kismat avers that if the parties had not succeeded in reaching a plea agreement, he would have entered an open plea in order to become eligible for a two- or three-point offense level reduction for acceptance of responsibility.[2] (Doc. 148, Decl. ¶ 31; Doc. 160 at 10).  However, this assertion is undermined by the fact that Kismat maintained his innocence to the identity theft charges throughout the trial and continues to do so.  (Doc. 148 at 32; Doc. 160 at 15); see

---

[2] This adjustment instructs sentencing courts to reduce the offense level by two levels "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense."  U.S.S.G. § 3E1.1(a).  The Guidelines direct courts to decrease the offense level by an additional level if the defendant otherwise qualifies for a reduction, the total offense level is sixteen or greater prior to the reduction, and the government files a motion stating, *inter alia,* that "the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty."  § 3E1.1(b).

<u>Gonzales–Rivera</u>, 217 F. App'x at 170.  Moreover, an open plea would have exposed Kismat to a mandatory consecutive two-year sentence for the charge of aggravated identity theft.[3]  18 U.S.C. § 1028A(a)(1).  Thus, Kismat fails to establish the prospect of a better result by means of a reduction for acceptance of responsibility.[4]

Kismat has not shown a reasonable probability that, had he been fully informed regarding plea negotiations, he would have received a more favorable sentencing outcome.  Accordingly, the court concludes that Kismat was not prejudiced by trial counsel's pretrial advocacy.

---

[3] The application of a three-point adjustment for acceptance of responsibility would have reduced Kismat's total offense level to twenty-four.  <u>See</u> U.S.S.G. § 3E1.1.  The Guidelines recommend a sentencing range of fifty-one to sixty-three months for a defendant with an offense level of twenty-four and a criminal history category of I.  The low end of this range, fifty-one months, added to the minimum sentence for aggravated identity theft, twenty-four months, produces a total of seventy-five months.  Applying the six-month downward departure that Kismat received at sentencing to the instant hypothetical, the court would have imposed prison term of sixty-nine months.  (<u>See</u> Doc. 138 at 24).

[4] Kismat further asserts that trial counsel was ineffective for failing to preserve Kismat's eligibility for a two-level reduction for acceptance of responsibility following trial.  (Doc. 148 at 31-32; Doc. 160 at 34-35).  Kismat cites the following Guidelines commentary: "Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction.  In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial.  This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).  In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct."  U.S.S.G. § 3E1.1 cmt. 2.  Kismat offers neither facts nor case law to demonstrate that his circumstances approximated the type of "rare situation" envisioned by the Guidelines.  <u>Id.</u> Additionally, as explained *supra*, Kismat fails to show prejudice.  Consequently, the court will not address this argument further.

### B.     Trial Counsel's Receipt of Assistance From Unappointed Co-counsel

Kismat alleges that trial counsel provided ineffective assistance by "assign[ing] tasks to a junior associate [who] was not appointed by the court." (Doc. 148 at 34; see Doc. 160 at 36-38). In support of this contention, Kismat explains, "Petitioner has the good faith belief that [C]riminal [J]ustice [A]ct appointments are attorney specific and that there are criteria that must be met for an attorney to be a member of the [C]riminal [J]ustice [A]ct panel." (Doc. 160 at 37).

The Criminal Justice Act ("CJA") authorizes the appointment and compensation of counsel to represent indigent defendants charged with federal offenses. 18 U.S.C. § 3006A. The Judicial Conference of the United States has set forth official guidelines ("CJA Guidelines") which govern the CJA program. 7A GUIDE TO JUDICIARY POLICY (2014). The CJA Guidelines permit unappointed co-counsel to assist appointed counsel, on the condition that co-counsel are not directly compensated under the CJA. Id. § 230.53.10. Kismat fails to offer the court any insight as to the manner in which co-counsel's assistance allegedly violated the CJA. Nor does Kismat describe how trial counsel's performance in tandem with co-counsel fell below an objective standard of reasonableness or caused Kismat prejudice. Hence, Kismat does not satisfy either prong of the Strickland analysis, and his ineffective assistance claim on this ground will be rejected.

### C.     Trial Counsel's Failure to Challenge Evidence Supporting Intended Loss Amount

Kismat contends that trial counsel was ineffective in declining to "challenge the evidence as to the Government's finding that the intended loss in this case as it

related to maximum credit lines was [$432,119.29]."  (Doc. 148 at 23).  Specifically, Kismat argues that trial counsel should have prevented the evidence which was set forth at Sorokin's presentence evidentiary hearing from being incorporated by reference during Kismat's sentencing proceedings.  (Id. at 24).

In sentencing, a court must engage in a three-step process pursuant to Gall v. United States, 522 U.S. 38 (2007).  First, it must calculate the advisory Guidelines range.  United States v. Wright, 642 F.3d 148, 152 (3d Cir. 2011).  Second, the court must formally rule on any motions for departure and state the impact, if any, of such ruling on the Guidelines calculation.  Id.  Third, the court is required to exercise its discretion and consider the sentencing factors set forth in 18 U.S.C. § 3553(a), which may vary from the advisory Guidelines range.  Id.

Generally, the government bears the burden to prove any facts that may warrant a Guidelines enhancement by a preponderance of the evidence.  United States v. Ali, 508 F.3d 136, 143 (3d Cir. 2007).  Section 2B1.1(b)(1) of the Guidelines provides for an increase to a defendant's offense level based upon the amount of loss attributable to fraud.  U.S.S.G. § 2B1.1(b)(1).  The loss amount is a specific offense characteristic, and thus, the government bears the burden of persuasion. United States v. Diallo, 710 F.3d 147, 151 (3d Cir. 2013).  Once the government presents *prima facie* evidence of a given loss figure, the burden of production shifts to the defendant.  Id.

"Loss" is defined as "the greater of actual loss or intended loss."  Diallo, 710 F.3d at 155 (quoting § 2B1.1 cmt. 3(A)).  "Intended loss" refers to "the pecuniary harm that was intended to result from the offense[] and . . . includes intended

pecuniary harm that would have been impossible or unlikely to occur." § 2B1.1 cmt. 3(A)(ii). The Third Circuit has held that intended loss may equal maximum potential loss, even when "a criminal does not know what he may expect to obtain, but intends to take what he can." United States v. Geevers, 226 F.3d 186, 193 (3d Cir. 2000). The district court must engage in a "deeper analysis" of the facts of the case before equating intended loss with potential loss. See Diallo, 710 F.3d at 151.

At Kismat's sentencing, the parties agreed to incorporate the evidence presented during Sorokin's loss amount hearing by reference. (Doc. 138 at 7-8). Thereafter, trial counsel reasserted a previously-filed objection to the PSR's loss calculation, contending that "the best measure of the intended loss is the value of the merchandise that Mr. Kismat obtained." (Id. at 10). Trial counsel also objected to the PSR's reliance on maximum potential loss in calculating intended loss. (Id. at 9-10). The court then found Kismat responsible for an intended loss amount based on the aggregate credit limit of the compromised credit accounts, which totaled $432,119.29. (Id. at 13-14). In reaching its decision, the court observed that Kismat and Sorokin would often "use a credit card repeatedly unless or until it was declined." (Id. at 13). The court also noted that, on one occasion, Kismat used the same compromised account nine times in a row until it was declined. (Id.) Citing United States v. Geevers, 226 F.3d 186, the court determined that "even though it was logistically improbable that Mr. Kismat would actually obtain the aggregate credit limit of all the compromised credit accounts, . . . [his] actions show that he would have taken the full amount if it were possible." (Doc. 138 at 13). On appeal,

the Third Circuit specifically affirmed the court's loss amount calculation.  Kismat,
570 F. App'x at 160-61.

Kismat asserts that by incorporating the evidence from Sorokin's
presentence proceeding, trial counsel deprived him of the opportunity to present
his "true amount of intended loss."  (Doc. 160 at 20).  Kismat contends that he "only
intended to steal enough money to support his . . . family," an amount which he
estimates to be approximately $25,900.  (Id. at 26).  Kismat endeavors to
demonstrate prejudice by detailing the testimony that he would have presented to
the court concerning his intended loss.  (Doc. 148 at 22).  *To wit*, Kismat
underscores the following events as instrumental in motivating his criminal activity:
he broke his jaw in a car accident; he lost his driver's license and was unable to
continue working as a commercial truck driver; his children from Russia moved in
with him; he suffered from depression and obsessive compulsive disorder; he was
placed on psychotropic medication; and he experienced marital problems.  (Doc.
148 at 22; Doc. 160 at 19).  According to Kismat, because "the Court was denied" this
"powerful, truthful . . . information, [it] arrived at the same exact [loss amount]
finding as . . . in the Sorokin proceeding."  (Doc. 148 at 23).  Kismat posits that had
the court been privy to these facts, it would have enhanced his offense level by four
points rather than fourteen, exposing him to a significantly lower Guidelines range
of twenty-four to thirty months.  (Doc. 160 at 22).

It is apparent that Kismat misapprehends the efficacy of his declarations.
Having determined that intended loss in the instant case equaled potential loss, the
court would not have considered the aforementioned testimonials when calculating

loss amount.  See Diallo, 710 F.3d at 151; Geevers, 226 F.3d at 193.  Such matters are

more appropriately examined under the sentencing factors set forth in 18 U.S.C.

§ 3553(a).  Indeed, the § 3553(a) record demonstrates that the court carefully

considered Kismat's history and characteristics, including that which Kismat

presents herein.[5]  Thus, Kismat fails to show that he was prejudiced by trial

counsel's agreement to incorporate by reference the loss amount evidence set forth

by the government at Sorokin's hearing.

### D.    Trial Counsel's Failure to Present Petitioner's Testimony and Failure to Inform Petitioner of the Right to Testify at Sentencing

Kismat's next claim is that trial counsel was ineffective for failing to advise

him of his right to testify at sentencing and for failing to call him as a witness

therein.  (Doc. 148 at 20).  Had he been so advised, Kismat avers that he would have

---

[5] Kismat's PSR noted that his two adult children resided with him at the time the report was generated.  (PSR ¶ 31).  The PSR further indicated that Kismat made approximately $10,000 to $12,000 per year through a home-operated business exporting goods to Russia and that he was employed as a commercial truck driver from 1998 through 2005.  (Id. ¶ 39).  Additionally, the PSR stated the following: "The defendant . . . reported that approximately three years ago he broke the right side of his jaw in a car accident. . . . The defendant stated [that] in 2005 he began having problems with depression, anxiety, and insomnia.  He noted that in 2005, he was diagnosed with major depression and was prescribed Wellbutrin.  Prior to being incarcerated, the subject was seeing a psychiatrist and taking medication to help him sleep and for his depression.  He noted that the medication was helping him."  (Id. ¶¶ 34, 35).

At Kismat's sentencing hearing, the court noted that it had "taken into consideration Mr. Kismat's background, [including] all of the information . . . contained in the presentence report."  (Doc. 138 at 22).  The court explained further, "I'm familiar with his cultural background, the fact that he has been self-employed as a truck driver in the past, that he's married, [and] has two children . . . ."  (Id. at 23).

explained his motives for committing fraud, set forth *supra*, to establish that he intended to cause less than $30,000 in loss.  (Id. at 20-23; Doc. 160 at 19).

Counsel may render constitutionally deficient performance by failing to advise a criminal defendant of his right to testify.  See Palmer v. Hendricks, 592 F.3d 386, 395 (3d Cir. 2010).  However, a petitioner's speculative claim that his testimony would have altered the outcome of the proceedings, without more, is insufficient to satisfy the Strickland prejudice prong.  See Palmer, 592 F.3d at 395; Alicea v. United States, No. 13-7235, 2015 WL 1842737, at *3 (E.D. Pa. Apr. 23, 2015); Zsa Zsa Council v. United States, No. 3:09-CR-378, 2013 WL 101515, at *8-9 (E.D. Va. Jan. 8, 2013); United States v. Mussare, No. 4:00-CR-281, 2013 WL 5638559, at *5 (M.D. Pa. Oct. 16, 2013) (Conner, C.J.).

The court disagrees that Kismat's suppositive testimony would have impacted his sentencing outcome.  As the court has already explained in detail above, Kismat inaccurately asserts that certain personal circumstances to which he attributes his criminal intent "went directly to the issue of intended loss."  (Doc. 148 at 23).  Kismat's argument continues to miss the mark.  The subject of his proposed testimony is unrelated to the court's loss amount calculation and was instead properly considered under 18 U.S.C. § 3553(a).  Thus, Kismat cannot establish prejudice under Strickland.

### E.    Trial Counsel's Failure to Investigate Certain § 3553(a) Factors

Kismat contends that trial counsel was ineffective for failing to ensure that the court considered all of the sentencing factors set forth in 18 U.S.C. § 3553(a).  (Doc. 148 at 24).  Specifically, Kismat asserts that trial counsel should have

investigated and presented evidence at his sentencing hearing pertaining to (1) the need to avoid an unwarranted sentencing disparity; (2) Kismat's role in the offense conduct; (3) Kismat's psychiatric history; and (4) Kismat's need for medical treatment.  (Id. at 27, 30).

The Supreme Court has instructed that counsel's "particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691.  Employing this standard, the court will address each claim *in seriatim*.

### 1.   *Sentencing Disparity*

Kismat contends that "there is a wealth of public information that establishes that [his] sentence is substantially higher than other similarly situated defendants nationwide," which trial counsel failed to tender for the court's consideration.  (Doc. 148 at 27).  Kismat requests that the court appoint counsel to perform further research into this matter.  (Id.)

Section 3553(a)(6) instructs district courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).  An unwarranted disparity may exist where such similarly situated defendants receive divergent sentences.  See United States v. Parker, 462 F.3d 273, 277 (3d Cir. 2006).  A petitioner asserting that counsel was ineffective for failing to highlight an unwarranted disparity must direct the court to relevant case law and provide adequate "assurance[s] of comparability."  United States v. Andrews, No. 04-38-2, 2014 WL 3411478, at *6 (D.V.I. July 14, 2014); see Parker, 462 F.3d at 278.  Merely

citing to a single case, however, is insufficient to demonstrate prejudice under Strickland. Andrews, 2014 WL 3411478, at *6; see United States v. Sanchez-Ramirez, 497 F.3d 531, 536 n.4 (5th Cir. 2007) ("Citing one case in which a lower sentence was imposed clearly cannot establish an unwarranted disparity under 18 U.S.C. § 3553(a)(6).").

To support his claim, Kismat cites United States v. Phillips, No. 2:12-00004, 2013 WL 145983 (M.D. Tenn. Jan. 14, 2013) aff'd, 553 F. App'x 533 (6th Cir. 2014), wherein the defendant received a sentence of thirty months of imprisonment after pleading guilty to possession of unauthorized access devices. (Doc. 160 at 28-29). Kismat notes the thirty-four month sentencing disparity and insists that "scores of [similar] cases [exist] . . . where defendants have received substantially lower sentences." (Id. at 28). Yet Kismat fails to provide a meaningful comparison of pertinent sentencing characteristics—such as loss amount and acceptance of responsibility—between his own case and Phillips. Moreover, he offers no additional case law for the court's consideration. See Andrews, 2014 WL 3411478, at *6. Quite simply, Kismat falls far short of carrying his burden to demonstrate prejudice. The court therefore declines to appoint counsel, and Kismat's ineffective assistance claim on these grounds must fail.

**2.     *Role in the Offense***

Kismat also asserts that trial counsel rendered deficient assistance by failing "to make the appropriate presentation to allow the Court to . . . [consider] Petitioner's true standing when applied to co-defendant Sorokin," pursuant to 18 U.S.C. § 3553(a)(6). (Doc. 148 at 27). The gravamen of Kismat's claim appears to be

that trial counsel should have marshaled evidence to demonstrate that Sorokin occupied a more central role in the offense conduct than Kismat, prompting the court to impose a lesser sentence on Kismat than on Sorokin to avoid an unwarranted sentencing disparity.[6] See § 3553(a)(6).

It is well-established that "a defendant cannot rely on § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." Parker, 462 F.3d at 277 ("We have concluded that Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case."). A district court is not required to consider sentencing disparity among co-defendants, although it may do so at its discretion. Id. at 278.

During Kismat's sentencing hearing, the court noted, "The information that has been supplied during the course of this trial indicates that Mr. Kismat was a more central figure in the scheme than Mr. Sorokin and was more culpable than Mr. Sorokin, so I do take into consideration the fact that Mr. Sorokin received a [fifty-eight month] sentence with an identical [G]uidelines range." (Doc. 138 at 23-24). Responding to this statement, Kismat makes the *ipse dixit* assertion that the court's discernment of his culpability relative to Sorokin was incorrect. (Doc. 148 at 27; Doc. 160 at 29). Nevertheless, he does not suggest what facts or evidence trial counsel might have presented on his behalf to cure the court's alleged solecism.

---

[6] The court sentenced Sorokin to fifty-eight months' imprisonment on September 16, 2013, approximately three months prior to Kismat's sentencing hearing. (See Doc. 109).

Without more, Kismat cannot demonstrate unreasonable representation or prejudice.  See Thomas, 221 F.3d at 437 (3d Cir. 2000) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.").  Kismat's claim on the foregoing grounds is therefore rejected.

### 3.   *Psychiatric History*

Kismat further alleges that trial counsel was ineffective for failing to investigate whether Kismat's "mental health and the treatment he received was a contributing force to [Kismat] engaging in the conduct that he did and whether with the right medication that [he] was not a risk to re-offend."  (Doc. 148 at 30; see Doc. 160 at 31-32).  Kismat avers that "there is a high probability that the result of the proceeding would have been different" if this information had been available to the court.  (Doc. 160 at 32; see Doc. 148 at 28-30).

*Per contra*, Kismat's claim is directly contradicted by the record.  As discussed in detail *supra*, the court was aware of Kismat's mental health conditions and associated medications at sentencing.  (PSR ¶ 35; Doc. 138 at 22).  Hence, the court will summarily dismiss Kismat's allegation as meritless.

### 4.   *Need for Medical Treatment*

Kismat contends that trial counsel "failed to investigate [his] mental health and failed to investigate if there was an alternative to incarceration," such as community confinement, "that would satisfy [his] need for medical treatment." (Doc. 148 at 30; see Doc. 160 at 32-33).  According to Kismat, the Bureau of Prisons has denied his requests for psychiatric treatment and for the psychotropic

medication which he previously took for depression and anxiety.  (Doc. 148 at 30-31;
Doc. 160 at 32-33).

To the extent that Kismat challenges the conditions of his confinement, his
claim is not cognizable under § 2255.  See Leamer v. Fauver, 288 F.3d 532, 540 (3d
Cir. 2002); Neely v. United States, No. 09-5831, 2010 WL 2950616, at *4 (D.N.J. July
22, 2010).  Moreover, the record does not establish sufficient facts to support
Kismat's allegation.  The court received and considered evidence regarding
Kismat's mental health conditions.  (PSR ¶ 35; Doc. 138 at 22).  After determining
Kismat's sentence, the court issued the following directive as a condition of
supervised relief: "[T]he defendant shall undergo a mental health evaluation, and, if
recommended, the defendant shall satisfactorily complete a program of outpatient
or inpatient mental health treatment."  (Doc. 138 at 26-27).  Counsel does not act
unreasonably by failing to advance meritless requests.  See Sanders, 165 F.3d at
253.  Accordingly, Kismat's claim fails under the first prong of Strickland.

### F.    Appellate Counsel's Ineffective Assistance

Kismat asserts that his appellate counsel rendered constitutionally deficient
performance by "bur[ying] [his] intended loss and sentencing issues in a mound of
weaker arguments."  (Doc. 148 at 35).  Kismat additionally argues that appellate
counsel unduly failed "to challenge the unreasonableness of the sentence imposed
and any factors related to procedural or substantive error," (id. at 25); in his reply
brief, Kismat clarifies that his assertion could encompasses a wide range of
unraised claims, including those which Kismat sets forth in the petition *sub judice*.
(Doc. 160 at 40).

Counsel's strategic decisions are accorded significant deference.  Marshall v. Hendricks, 307 F.3d 36, 85 (3d Cir. 2002); Parmelee v. Piazza, 622 F. Supp. 2d 212, 227 (M.D. Pa. 2008).  Appellate counsel is not required to advance every nonfrivolous claim, but rather may argue only certain claims to maximize the chance of success on appeal.  United States v. Ushery, No. 1:07-CR-403, 2012 WL 2871663, at *4 (M.D. Pa. July 12, 2012) (Conner, C.J.) (citing Smith v. Robbins, 528 U.S. 259, 288 (2000)).  Generally, the presumption of effective assistance will only be overcome when unraised issues are clearly stronger than those presented.  See Smith, 528 U.S. at 288.  A petitioner may demonstrate prejudice by evidencing a reasonable probability that the result on appeal would have been different but for counsel's deficient performance.  See United States v. Mannino, 212 F.3d 835, 845 (3d Cir. 2000).

Kismat's appellate counsel raised the following issues on appeal: (1) the court committed reversible error by providing a willful blindness jury instruction; (2) the court committed plain error by failing to give a jury instruction regarding Kismat's good faith defense; (3) the court committed plain error in its bank fraud jury instruction; (4) the cumulative effect of the failure to instruct the jury on Kismat's good faith defense and the deficiency in the bank fraud instruction warrants reversal; (5) there was insufficient evidence presented to prove that Kismat had the requisite *mens rea* to commit bank fraud and wire fraud; (6) the court erred in its calculation of intended loss amount; and (7) the court erred in its calculation of the number of victims.  See Kismat, 570 F. App'x 155.  The Third Circuit responded to each claim in full and provided unabridged analysis throughout its opinion.  See id.

23

Kismat's scant allegations regarding appellate counsel's strategy are both conclusory and incongruous.  Kismat makes no attempt to show how the claims raised on appeal which he deems "silly" overwhelmed the more meritorious claims. (See Doc. 160 at 40).  Moreover, he contradicts himself by further contending that appellate counsel was ineffective for failing to raise innumerable additional claims. (Id.)  At no point does Kismat explain how said unexplored averments are clearly stronger than those which were presented.  See Smith, 528 U.S. at 288.  Without more, the court cannot conclude that it was objectively unreasonable for appellate counsel to raise the seven aforementioned claims on appeal.  Accordingly, the court finds that appellate counsel was not ineffective.

## IV.    <u>Conclusion</u>

The record affirmatively indicates that Kismat's ineffective assistance of counsel claims are without merit.  Thus, additional discovery and a hearing are not necessary.  For the foregoing reasons, the court will deny Kismat's motion (Doc. 148) to vacate, set aside, or correct sentence for ineffective assistance of counsel. The court will also deny Kismat's request (Doc. 165) for the appointment of counsel to conduct discovery.  The court will further deny Kismat's motion (Doc. 163) for bail as moot.  An appropriate order follows.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:      August 18, 2015