IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. 1:11-CR-301 |
| | : |
| v. | : (Chief Judge Conner) |
| | : |
| RAMIL KISMAT, | : |
| | : |
| Defendant | : |

### MEMORANDUM

Defendant Ramil Kismat's ("Kismat's") motion (Doc. 148) to vacate, set aside, or correct his sentence recrudesces to the court upon remand from the United States Court of Appeals for the Third Circuit. (Doc. 174). Kismat avers that he was denied his Sixth Amendment right to effective counsel because his trial counsel, *inter alia*, failed to adequately apprise him of the plea agreement process, as well as of plea negotiations that trial counsel allegedly conducted with government counsel. The court initially denied Kismat's motion on August 15, 2015. (Doc. 168). Kismat appealed the court's decision to the Third Circuit. (Doc. 172). The Third Circuit granted Kismat's application for a certificate of appealability with respect to issues concerning trial counsel's explanation of the plea negotiation process and the existence of an alleged plea agreement. (Doc. 174). The Third Circuit subsequently remanded the matter to this court to conduct an evidentiary hearing to evaluate Kismat's claims with respect to the plea agreement issues. (Doc. 175). For the reasons that follow, the court will deny Kismat's motion.

### I.   Factual Background & Procedural History

On October 26, 2011, a grand jury returned an indictment charging Kismat and his co-defendant Sergey Sorokin with bank fraud, in violation of 18 U.S.C. §

1344 (Count I); wire fraud, in violation of 18 U.S.C. § 1343 (Count II); identification fraud, in violation of 18 U.S.C. § 1028(a)(7) (Count III); and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Count IV). (Doc. 1). On January 10, 2012, Kismat entered a plea of not guilty to all charges. (Doc. 12). The court subsequently appointed Dennis E. Boyle, Esquire as counsel on his behalf. (Doc. 22).

A jury trial commenced on November 26, 2012 and ended on November 29, 2012. (Docs. 119-22). The jury found Kismat guilty of bank fraud and wire fraud but deadlocked on the charges of identification fraud and aggravated identity theft. (Doc. 72). The court declared a mistrial as to the identity theft charges, (Doc. 122 at 26:6-7), and the government elected not to pursue another trial on those charges. (Doc. 132). On December 19, 2013, the court sentenced Kismat to 64 months of imprisonment on each of Counts I and II, to be served concurrently. (Id.) The court further sentenced Kismat to two years of supervised release, a $200 special assessment, and $25,941.97 in restitution. (Id.)

Kismat filed the instant motion (Doc. 148) to vacate, set aside, or correct his sentence on November 3, 2014. In his motion, Kismat asserts, *inter alia*, that Attorney Boyle rendered constitutionally deficient performance in the plea negotiation process. (Id. at 14). Kismat specifically alleges that "if not for Attorney Boyle's deficient performance, Kismat would have obtained a plea agreement." (Id. at 16). Kismat submits that Boyle did not describe the plea agreement process, the elements of the charged crimes, or the differences in sentencing exposure as between plea agreements and full trials. (Id. at 13). Further, Kismat claims that

Attorney Boyle did not alert him to the possibility of pleading guilty or reaching agreements with government counsel. (Id.) In support of said arguments, Kismat notes that evidence of his guilt was overwhelming, as was evidence of loss amount. (Id. at 6). He further argues that if Boyle had not been successful in pursuing a plea agreement, he would have entered an open plea to take advantage of the "acceptance of responsibility" sentencing reduction. (Id., Decl. ¶ 31). *In toto*, Kismat submits that Mr. Boyle "refused to provide Kismat with any counsel as it related to the consideration of a plea, failed to engage in plea negotiation[s] and conducted no investigation of the case." (Id. at 22). The court originally denied Kismat's petition on August 18, 2015. (Doc. 168). Kismat appealed to the United States Court of Appeals for the Third Circuit. (Doc. 172). The Third Circuit dismissed Kismat's claims except those concerning the plea negotiation process. (Doc. 174). In its mandate (Doc. 175), the Third Circuit remanded the matter for an evidentiary hearing, tasking the court to determine whether:

> 1) trial counsel unreasonably failed to convey a plea offer to Kismat, 2) trial counsel unreasonably failed to advise Kismat regarding the plea bargaining process in general and specifically of the potential sentencing benefits of entering a guilty plea, and 3) trial counsel's deficient performance in these regards prejudiced Kismat.

(Id.) The court conducted an evidentiary hearing on October 18, 2016 to evaluate the issues described in the Third Circuit's mandate. (Doc. 180). The motion is fully briefed and ripe for review.

**II.    Legal Standard**

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence.  In general, relief under § 2255 is afforded based on one of four grounds: (1) the sentence was imposed in violation of the Constitution or other federal laws; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  R. GOVERNING § 2255 CASES R. 1(a).

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To prevail on this claim, a petitioner must demonstrate (1) that counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms and (2) that the deficient representation was prejudicial.  See id. at 687-88.  Conclusory allegations are insufficient to entitle a petitioner to relief under § 2255.  See Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

In determining whether counsel has satisfied the objective standard of reasonableness in accordance with the first prong, courts must be highly deferential toward counsel's conduct.  Strickland, 466 U.S. at 689.  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989).  Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance."

Id. at 711 (citing Strickland, 466 U.S. at 689-90). Counsel will not be deemed ineffective for failing to raise a meritless claim. See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that, but for counsel's errors, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 694. The district court need not conduct its analysis of the two prongs in a particular order or address both prongs of the inquiry if a defendant makes an insufficient showing in one. See id. at 697; United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

### III. Discussion

Kismat asserts that his counsel was ineffective with respect to the pretrial plea agreement process. (Doc. 148 at 11). During his hearing,[1] Kismat sought to demonstrate that Attorney Boyle failed to convey a plea agreement to him, failed to advise him of the plea agreement process, and failed to describe the benefits of a guilty plea with respect to sentencing exposure, and that these failures prejudiced Kismat. (Doc. 175). Courts encountering these claims must consider several salient factors when determining whether trial counsel was ineffective for Sixth Amendment purposes, including: (1) whether a plea agreement existed before the criminal defendant's trial; (2) whether trial counsel failed to convey the existence of such an agreement to the defendant; (3) whether trial counsel failed to advise a

---

[1] As of the date of this opinion, an official transcript of the October 18 hearing is not yet available. The court reporter has provided the court with a rough draft of the transcript of that hearing, and citations thereto are abbreviated throughout as "10/18/16 Tr." Pagination of the rough draft may vary from pagination of the official transcript.

criminal defendant as to the plea agreement process; (4) whether trial counsel failed to discuss the differing sentencing exposure between pleading guilty and going to trial; and (5) whether any of these failures prejudiced the criminal defendant. (Doc. 175); see also Missouri v. Frye, 132 S. Ct. 1399, 1405-11 (2012).

Kismat testified that he had little access to Attorney Boyle. He asserted that he was consistently relegated to Mr. Boyle's associate. (10/18/16 Tr. 5:3-10). He testified that neither Attorney Boyle nor his associate explained the indictment to him. (Id. at 7:7-12). Kismat claimed that he told his attorneys that he did not want to go to trial. (Id. at 7:21-8:11). Kismat testified he did not understand that a guilty plea could result in lessened sentencing exposure until after he was convicted. (Id. at 10:23-11:4). Kismat also charged Mr. Boyle with failing to discuss the possibility of cooperating with authorities, and even warning him not to cooperate. (Id. at 12:3-20).

*Per contra*, Attorney Boyle testified that he never received a plea agreement from government counsel because Kismat was adamant about bringing this matter to trial. (Id. at 37:9-12, 40:17-22). Mr. Boyle contacted the government to discuss the possible terms of a plea agreement and was informed that the government wanted Kismat to cooperate in the prosecution against his codefendant. (Id. at 39:20-40:5). Mr. Boyle explained that Kismat could plead guilty and encouraged Kismat to cooperate with the authorities to obtain a plea agreement, but Kismat informed him he would never accept such an agreement. (Id. at 37:16-18; 40:9-15). In addition, Attorney Boyle credibly testified that he fully explained the plea agreement process to Kismat in light of Kismat's unfamiliarity with the American criminal justice

system.[2]  (Id. at 37:13-20).  Mr. Boyle's explanation included discussion of the differences in sentencing exposure with respect to plea agreements and trials.  (Id. at 36:19-37:6).  Moreover, Mr. Boyle credibly testified that he alone took on the responsibility of meeting with Kismat and explaining his options.  (Id. at 38:11-12).  Attorney Boyle personally handled discussions of guilty pleas, witnesses, and trial strategy with Kismat.  (Id. at 39:1-6).  Mr. Boyle testified that he met with Kismat to discuss these issues "at least four or five times."  (Id. at 37:23-24).

The court finds that Boyle's testimony is credible and that Kismat's testimony is not credible.  Kismat testified in his own self-interest.  He did not persuasively demonstrate that Attorney Boyle or his associate contravened their duties or failed to explain the plea agreement process.  Mr. Boyle provided clear and cogent answers to questions posed by both the government and Kismat's § 2255 counsel, and convincingly demonstrated that he and his associate discussed all relevant with Kismat.  Boyle fully explained Kismat's options in light of his assertion of innocence, and met with Kismat personally on multiple occasions in preparation for trial.  (Id. at 39:1-6).  He forthrightly testified as to his efforts to have Kismat agree to cooperate in hopes of reaching a plea agreement, and his failures in light of Kismat's contumacy.  As Mr. Boyle succinctly stated, "Kismat never

---

[2] The court notes that Attorney Boyle testified about his prior experience in criminal law.  Mr. Boyle maintains a domestic and international criminal defense practice.  (10/18/16 Tr. 43:20-23).  He has tried over 200 criminal jury trials as defense counsel, government counsel, and as a Judge Advocate for the Navy.  (Id. at 43:24-44:3).  Mr. Boyle testified that one of the central aspects of his practice is explaining the American criminal justice system to people who are unfamiliar with it.  (Id. at 44:10-21).  Attorney Boyle credibly testified that he used his experience and knowledge to explain Kismat's situation to him.  (Id.)

entertained the possibility of pleading guilty" despite Boyle's repeated explanations of the benefits of doing so.  (Id. at 37:9-10).  The court finds this specific statement to be quite credible in the context of Mr. Boyle's comprehensive explanation of his tactical approach to defending Kismat.

      The court concludes that Attorney Boyle was not ineffective for Sixth Amendment purposes with respect to the plea agreement process.  Boyle did not fail to communicate the existence of a plea agreement to Kismat because no offer ever existed.  Kismat's ability to pursue a plea agreement evanesced not because of his Attorney Boyle's constitutionally inadequate representation, but because of Kismat's unyielding refusal to cooperate with the government's investigation.  The Constitution does not protect defendants who deny their counsel opportunities to advocate on their behalf, including in the pretrial context.  See generally Frye, 132 S. Ct. 1399.

### IV. <u>Conclusion</u>

The court will deny Kismat's motion (Doc. 148) to vacate, set aside, or correct his sentence. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:   November 4, 2016